DEBORAH NEWBROUGH, Plaintiff-Appellant, v. LOCKWOOD DAIRY *et al.*, Defendants-Appellees.

Third District   No. 3—90—0755

Opinion filed January 15, 1992.

James R. Wyer, of Geneva, for appellant.

Gerard E. Majerczyk, of Garrison, Fabrizio & Hanson, Ltd., of Joliet (Mark E. Hanson, of counsel), for appellees.

JUSTICE GORMAN delivered the opinion of the court:

This action was brought by plaintiff Deborah Newbrough against defendant Lockwood Dairy for personal injuries resulting from an auto accident. After a jury trial, plaintiff was awarded $48,500 in damages, which award was then reduced by 40% for plaintiff's contributory negligence. Plaintiff appeals. We affirm.

At 2 p.m., November 17, 1988, plaintiff was driving southbound on a four-lane highway near a mall. She was lost and looking for street signs. Plaintiff stopped at the red light at an intersection. Defendant Frank Moeller, who was driving the Lockwood Dairy truck, pulled up behind plaintiff. He stated that traffic was heavy, which was normal for that time of day. When the light turned green, plaintiff pulled away with no traffic in front of her. She stated that she accelerated at a regular speed. The weather was clear and the pavement dry. Plaintiff testified that she was going

very slowly, slower than the other traffic in front of her. Defendant stated that he was three car lengths behind plaintiff. He looked away. Defendant stated that plaintiff's car appeared to come to a stop in the road. Defendant's truck hit plaintiff's car. Defendant testified that neither plaintiff's taillights nor her brakelights were lit. Plaintiff did not testify that she applied her brakes or signalled to traffic behind her. At the point of impact, the nearest place to turn right was 1½ blocks ahead; the nearest place to turn left was one-half mile away. Neither party was ticketed for the accident.

Plaintiff was taken to the hospital, treated, and released. On November 18, 1988, she went to Delnor Hospital and was referred to Dr. Anthony Kitslar, a neurologist. Plaintiff also later consulted Dr. Bukowy and Dr. Kochno.

Plaintiff sued defendant for her personal injuries.

At trial, Dr. Kitslar testified that he conducted a neurological exam on plaintiff on November 22, 1988, the results of which were normal. Plaintiff had told Dr. Kitslar of her history of psychiatric disorders including anxiety, depression, for which she had earlier been hospitalized, and manic depression, for which she had taken medication. Dr. Kitslar found her most marked symptoms were a visible anxiety and an inability to concentrate. She also had pressured speech and flight of ideas. Dr. Kitslar diagnosed plaintiff as having an anxiety disorder. Further, he testified that plaintiff did not have post-concussive syndrome, which is a syndrome involving considerable dysfunction following certain head injuries. It can vary from mild post-traumatic headaches to memory difficulties and difficulties with concentration. He testified that he saw no indication of any significant soft tissue injury. He prescribed an antianxiety medication and recommended that plaintiff see a psychiatrist if the drug was not effective.

A few days later, plaintiff saw Dr. Bukowy. Dr. Bukowy testified that he ran a variety of tests, the results of which were normal. He did not inquire about plaintiff's past psychiatric treatment and plaintiff did not reveal such history. He said that on his first visit with plaintiff, she had some or most of the symptoms of mania. Plaintiff complained of severe difficulty concentrating, and Dr. Bukowy diagnosed her as suffering from post-concussive syndrome, attributable to the accident. In December 1988, Dr. Bukowy prescribed an antidepressant medication.

Plaintiff testified that a few weeks after the accident, she sprained her ankle. In January and February 1989, plaintiff had

surgery for breast cancer. She experienced considerable fatigue from chemotherapy following the surgery.

Plaintiff testified that she consulted Dr. Taras Kochno in January 1990. He knew that she planned to call him as an expert at her trial. He testified that he examined her and took a medical history, but plaintiff did not reveal her history of psychiatric disorders. He diagnosed her as having a condition known as fibromyalgia, which is a controversial condition being debated in the medical literature. It cannot be objectively diagnosed. The symptoms of this disorder are a history of sleep disturbance and chronic fatigue, which plaintiff had. Dr. Kochno stated that he believed fibromyalgia is related to depression, not trauma.

Plaintiff's medical bills in the amount of $13,972.50 were admitted into evidence. A summary of these expenses was provided to the jury.

At the conclusion of the evidence, the court gave the jury instructions. These included the definition instruction on contributory negligence and the violation of statute instructions with regard to the law that no person may stop or suddenly decrease speed without the appropriate signal and the law that no person shall drive at such a slow speed which impedes or blocks reasonable movement of traffic.

The jury returned a verdict finding defendant liable. It found that the total damages suffered by plaintiff were $48,500, with $7,500 of that amount for present and future medical expenses. The jury also found plaintiff contributorily negligent by 40% and reduced her damages accordingly. Plaintiff now appeals.

■■ The first issue that plaintiff raises for our consideration is whether the trial court abused its discretion in giving defendant's jury instructions on contributory negligence and violation of statute. The trial court did not abuse its discretion in giving defendant's jury instructions on contributory negligence. It is well settled that a party may not complain of instructions given by the trial court at the request of another where the court at his request has given the same kind of instructions. (*Prostko v. Willstead* (1966), 75 Ill. App. 2d 477, 220 N.E.2d 751.) That case involved a dispute in the evidence regarding whether plaintiff had properly signalled. Plaintiff asserted on appeal that it was error to submit the definition instruction of contributory negligence and the instruction on duty of ordinary care. The court affirmed the giving of the instructions because "[t]he issues presented by these instructions had already been injected into the case by plaintiffs' [instruction] on the burden of

proof." (*Prostko*, 75 Ill. App. 2d at 480.) Likewise, here, plaintiff submitted jury instructions on the burden of proof (Illinois Pattern Jury Instructions, Civil, No. 21.02 (2d ed. 1971)) (hereinafter IPI Civil 2d) and on the use of verdict forms (IPI Civil 2d No. 45.01), both of which refer to contributory negligence. Thus, plaintiff injected the issue of contributory negligence into the trial and may not now complain about defendant's instructions on this same issue.

Furthermore, the trial court did not abuse its discretion in giving defendant's instructions on violation of statute. In *Luker v. Contract Steel Carriers, Inc.* (1968), 103 Ill. App. 2d 296, 243 N.E.2d 6, the appellate level upheld the giving of the instruction on violation of statute for driving at an unsafely slow speed. There the plaintiff's decedent's truck struck the rear of defendant's truck. Defendant died before trial so that there was no testimony from him. The only direct testimony as to what occurred was from a third driver who, while one-half mile away, saw decedent's trailer lights go off. The third driver first saw the lead truck when he arrived at the accident.

Here, there was evidence that plaintiff was lost. She testified that she was looking at street signs and going very slowly. She stated that when she looked up, the traffic had proceeded on and passed her by. Defendant testified that plaintiff's brake lights were not lit and that she did not give a signal as to her speed. This is clearly a greater quantum of evidence than that justifying the instructions given in *Luker*. In view of these facts, there was enough evidence on which to base the instructions.

■ The second issue plaintiff raises is whether the award of $7,500 for present and future medical expenses was manifestly inadequate. We uphold the amount awarded. The amount of a verdict is generally within the discretion of a jury, and a reviewing court will not order a new trial on damages unless the damages awarded are manifestly inadequate or it is clear that the amount of the award bears no reasonable relationship to the loss suffered by the plaintiff. (*Elliott v. Koch* (1990), 200 Ill. App. 3d 1, 558 N.E.2d 493.) In order to determine whether the jury verdict on damages should be reversed, the court must consider the record as a whole; this includes any evidence which carries an implication that the injuries were exaggerated or feigned or that medical treatment was not necessary or was prolonged. (*Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 432 N.E.2d 1267.) There the court found not palpably inadequate a jury award for personal injuries in an amount less than the hospital and doctor bills submitted. The court found on ap-

peal that the record revealed that the jury had ample reason to question the nature and extent of the alleged injury to plaintiff and the legitimacy of her expenses. Plaintiff had been involved in a rear-end collision, did not seek medical attention until three to four days later, and complained of stiffness plus pain in the pelvic area and lower stomach. The plaintiff received physical therapy for several months. Plaintiff's doctor sent his bills to plaintiff's attorney. The court stated that there was substantial evidence that plaintiff's treatment was unwarranted or prolonged.

Here, there was evidence carrying the implication that plaintiff's injuries were exaggerated or feigned and that the medical treatment was not necessary. Plaintiff was not candid about her prior psychiatric problems with Doctors Bukowy and Kochno, who diagnosed her as having, respectively, post-concussive syndrome and fibromyalgia. Dr. Kitslar, the only physician with a complete medical and psychiatric history of plaintiff, testified that plaintiff did not have post-concussive syndrome. He stated that he prescribed an antianxiety medication for plaintiff and recommended that she see a psychiatrist if the drug was unhelpful. Moreover, plaintiff admitted to lying during her deposition testimony when she denied her psychiatric history. From this evidence, the jury could have concluded that part of plaintiff's treatment after the collision was for a problem not caused by this accident, but was for a preexisting problem. Moreover, it could have concluded that her testimony regarding her injuries was simply not credible. As in *Nicholl*, the jury had ample reason to question the nature and extent of the alleged injury to plaintiff. In sum, the $7,500 award to plaintiff for her present and future medical expenses is reasonably supported by the record as a whole and is not manifestly inadequate.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY, P.J., and HAASE, J., concur.